UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

 DANIEL M.,

                                 Plaintiff,

v.                                                                                   1:19-CV-1282
                                                                                     (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>SAMANTHA VENTURA, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | SIXTINA FERNANDEZ, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 11.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is granted to the extent he seeks remand for further proceedings, and the Commissioner's motion is denied.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born in 1967. (T. 192.) He completed high school. (T. 211.) Generally, Plaintiff's alleged disability consists of post-traumatic stress disorder ("PTSD"), anxiety, depression, ACL reconstruction, and arthritis in right knee. (T. 210.) His alleged disability onset date is January 1, 2012. (T. 192.) His date last insured is March 31, 2013. (*Id.*) His past relevant work consists of counselor, laborer, lawn care, and shipper. (T. 211.)

    B.     **Procedural History**

On August 13, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 90.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 5, 2017, Plaintiff appeared before the ALJ, Gregory Moldafsky. (T. 30-77.) On August 31, 2018, ALJ Moldafsky issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-29.) On July 24, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-25.) First, the ALJ found Plaintiff met the insured status requirements through March 31, 2013 and Plaintiff had not engaged in substantial gainful activity since January 1, 2012. (T. 14-15.) Second, the ALJ found Plaintiff had

the severe impairments of: osteoarthritis of the right knee status-post ACL repair and three prior knee arthroscopies with partial meniscectomy; bipolar disorder; depressive disorder; and a history of polysubstance abuse. (T. 15.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id*.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); except:

> occasional ramps and stairs; no ladders, ropes, or scaffolds; occasional kneeling and crouching; frequent stooping; no crawling; occasional pushing and pulling with the right lower extremity; and no working at unprotected heights. In addition, [Plaintiff] would be limited to simple (as defined in the DOT as SVP levels one and two), routine, and repetitive tasks, in a work environment that is not fast paced or has strict production quotas (e.g., work that is goal based or measured by end result). [Plaintiff] would be limited to no more than incidental interaction with the general public and no more than occasional interaction with coworkers and supervisors. Further, [Plaintiff] would be limited to jobs where changes in work setting or processes are few, if any, and any changes are explained in advanced.

(T. 22.) Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 23-24.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings. Plaintiff argues the ALJ's RFC is unsupported by substantial evidence because he had no medical opinions in the record and relied solely on his own lay judgment. (Dkt No. 8 at 9-17.) Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 10.)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's RFC finding for a range of light work is supported by substantial evidence. (Dkt. No. 9 at 7-15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

4

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

Plaintiff essentially argues the ALJ committed legal error in formulating Plaintiff's RFC because the record contained no medical opinions and therefore the ALJ relied on his own lay interpretation of the record.  (Dkt. No. 8 at 9-17.)

Plaintiff's argument, that the ALJ's RFC determination is the product of legal error and not supported by substantial evidence because there was no medical opinion to support the RFC determination, fails.  Plaintiff essentially argues substantial evidence requires a medical opinion to support an RFC.  Neither the regulations nor Second Circuit caselaw requires an ALJ to base an RFC on a medical opinion.  However, in so far as Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence, he prevails.

In general, the RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)[1].  Plaintiff, citing SSR 83-10, asserts an RFC is a "medical assessment" and therefore because it is a medical assessment it is error for the ALJ, a lay person, to make a determination without medical reports specifically explaining the scope of Plaintiff's work related capabilities.

---

[1]   On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Plaintiff filed his claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

(Dkt. No. 8 at 9 citing SSR 83-10, *Johnson v. Colvin*, No 15-CV-649, 2016 WL 4472749, at *5 (W.D.N.Y. Aug. 25, 2016).)

To be sure, SSR 83-10 defines an RFC as "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)." Although the SSR uses the term "medical" in its definition of RFC, the RFC determination is nonetheless reserved to the Commissioner.

As outlined in the regulations:

> [w]e use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as [. . .] your residual functional capacity (see §§ 404.1545 and 404.1546), [. . .] the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Therefore, regardless of whether the term medical is used to define the RFC, the final responsibility for deciding a plaintiff's RFC is reserved to the Commissioner, not a medical source.

In addition, an ALJ's factual findings, such as the RFC determination, "shall be conclusive" if supported by "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504 (2019); 42 U.S.C. § 405(g). Substantial evidence "means - and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Biestek,* 139 S. Ct. at 1154.

Caselaw from this Circuit further supports the conclusion that an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. Where the record contains sufficient evidence from which an ALJ can assess a plaintiff's RFC, a medical source statement or formal medical opinion is not necessarily

7

required.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017); *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (remand not required to obtain a treating source opinion where the record contained sufficient evidence from which the ALJ could assess plaintiff's RFC).  In assessing plaintiff's RFC in *Monroe*, the ALJ relied on a treating source's "years' worth of treatment notes" which provided descriptions of the plaintiff's symptoms, objective medical assessments, and notes relating to the plaintiff's social activities.  *Monroe,* 676 F. App'x at 8.  In *Tankisi* the medical record was "quite extensive" and although it did not contain a formal opinion of the plaintiff's RFC, it did include an assessment of the plaintiff's limitations by a treating source, voluminous medical records, and opinions from consultative physicians. *Tankisi,* 521 F. App'x at 34.

Moreover, remand is not necessary merely because the ALJ failed to conduct an explicit function-by-function analysis in determining a plaintiff's RFC.  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  Indeed, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision."  *Cichocki,* 729 F.3d at 178 n.3 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)).

Remand may be appropriate where there are "inadequacies in the ALJ's analysis [that] frustrate meaningful review."  *Cichocki,* 729 F.3d at 177.  In other words, an ALJ must conduct an analysis that would permit adequate review on appeal, and the ALJ's conclusions must be supported by relevant medical evidence.  *Winn v. Colvin*, 541 F. App'x. 67, 70 (2d Cir. 2013); *see Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (citing *Sewar v. Berryhill*, 2018 WL 3569934, *2 (W.D.N.Y. July 25,

2018) ("What is required is that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review.")).

Here, the record did not contain sufficient information from which the ALJ could support his RFC determination. *Guillen v. Berryhill*, 697 F. App'x. 107, 108-109 (2d Cir. 2017) ("Unlike *Tankisi*, the medical records obtained by the ALJ do not shed any light on Guillen's residual functional capacity" and medical records merely indicate her diagnoses and symptoms but they "offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life). The record is not insufficient because it lacks a functional medical assessment; the record is insufficient because it offered no insight into how Plaintiff's impairments affected his ability to work.  *See Guillen*, 697 F. App'x at 109.

As outlined further below, the record contained treatment notations, objective observations, and Plaintiff's testimony; however, the record as a whole did not contain "relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's RFC conclusion. *Biestek,* 139 S. Ct. at 1154.

Here, the record contains no medical source opinions, nor do treatment notations contain statements regarding Plaintiff's physical or mental abilities or limitations.  In addition, the Commissioner did not order a consultative examination, and a non-examining State agency medical consultant stated the record was "insufficient" to make a disability determination.  (T. 82.)  In addition, although the record contains over 1,500 pages of medical records, many of the records significantly predate Plaintiff's alleged onset date or consist of emergency room treatment as a result of substance abuse.

9

Such evidence provides little, if any, insight into Plaintiff's ability to perform the basic demands of work.

Plaintiff's treatment history is complicated by substance abuse, incarceration, noncompliance with treatment, and lack of treatment.  For example, in January 2013, a year after his alleged onset date and two months prior to his date last insured, Plaintiff presented to the emergency room claiming he was depressed and suicidal.  (T. 709.)  However, after being unsatisfied with the treatment option of Ativan, Plaintiff demanded discharge claiming his "main problem" was drug addiction.  (*Id*.)  He was discharged and described as "med seeking."  (*Id*.)  In June of 2013, Plaintiff was admitted to the hospital due to concerns he may harm himself.  (T. 701.)  Plaintiff was described as hostile, agitated, and not cooperative.  (*Id*.)  He had crack and Xanax hidden in his underclothes.  (*Id*.)  Plaintiff insisted he was not suicidal (T. 702), claiming "he was on drugs and not himself" and had a "difficult day yesterday" because he was caught stealing (T. 704).

In 2013, Plaintiff attended four mental health treatment sessions during which time he was described as hyperalert, intense, uneasy, anxious and hostile.  (T. 661, 673, 685.)  Providers noted Plaintiff was in "complete denial of problems" (T. 661) and his commitment to treatment was questionable (T. 685).  He was discharged for failure to show.  (T. 690.)

Plaintiff's most consistent mental health treatment lasted from September 2015 through his 2017 hearing.  (T. 1963-1983.)[2]  Treatment notations from that period contain objective observations, but no functional evaluations.  For example, on multiple

---

[2] Of note, this treatment began three years after his alleged onset date and two years after his date last insured.

occasions Plaintiff was described as pleasant and cooperative.  (T. 1974, 1976, 1980.)  Treatment notations also contained Plaintiff's work status and current stressors.  In February 2016, Plaintiff reported he quit his current employment because it interfered with his methadone clinic.  (T. 1979.)  In April 2016, Plaintiff reported he found a position that had a more flexible work schedule; however, a notation from June indicated Plaintiff lost this job.  (T. 1976, 1977.)  Plaintiff was again employed in June 2016 and reported he felt "pretty in control and doing pretty stable."  (T. 1975.)  In October 2016 Plaintiff reported he lost his job due to a knee injury.  (T. 1973.)  The provider described Plaintiff as in control, but "somewhat elevated, a little pressured and a little flighty and very superficial, evasive and minimizing any problems."  (*Id*.)  In December of 2016, Plaintiff was brought to the hospital unresponsive.  (T. 1969.)  Plaintiff reported taking "extra pills," had recently been released from jail, and wanted to "get high."  (*Id*.)

In February 2017, Plaintiff reported legal and employment stressors, but claimed he was "clean with methadone."  (T. 1967.)  In May 2017, Plaintiff reported he pretended to hang himself in jail because he was not receiving his medications.  (T. 1965.)  In August 2017, Plaintiff reported everything was "going well" and he was employed.  (T. 1964.)  The provider noted "clinically [Plaintiff] is doing well" and getting off methadone maintenance program.  (*Id*.)  In November 2017, Plaintiff reported stress due to the death of his mother and being off methadone.  (T. 1963.)

The record concerning Plaintiff's physical impairments is also sparse and lacks any evidence of Plaintiff's abilities.  Plaintiff sought treatment in March 2017, well after his alleged onset date and date last insured, for right knee pain.  (T. 729-734.)  At that

11

time, Plaintiff reported lifting a large concrete slab in October 2016 and feeling a "pop" in his knee. (T. 729.) The examining provider noted Plaintiff's pain "may simply be secondary to exacerbation of underlying degenerative arthrosis" and referred Plaintiff for an MRI. (T. 731.) At a follow up appointment in April 2017, the provider suggested Plaintiff undergo a "right knee arthroscopy with partial medial meniscectomy, loose body removal and chondroplasty." (T. 734.) The record contains no additional medical records concerning Plaintiff's knee after April 2017.

The ALJ properly summarized the evidence in the record as outlined above. (T. 18-22.) In formulating Plaintiff's mental RFC, the ALJ concluded Plaintiff's mental impairments would not "preclude all work activity." (T. 22.) The ALJ reasoned the "bulk" of Plaintiff's depression and anxiety stemmed from the stress of unemployment and situational stressors. (*Id*.) The ALJ further relied on Plaintiff's testimony he lost his job due to incarceration, not to impairment related reasons. (*Id*.) Lastly, the ALJ relied on Plaintiff's activities such as his ability to attend mental health treatment, Bible study, church, AA meetings, and volunteering. (*Id*.)

To be sure, the non-medical evidence considered by the ALJ, such as Plaintiff's situational stressors, activities, and past work experiences, are relevant in formulating Plaintiff's RFC. However, evidence Plaintiff lost employment for non-impairment related reasons and attended church, does not constitute substantial evidence to support the RFC determination. *See Guillen*, 697 F. App'x at 109 ("The medical records discuss [plaintiff's] illnesses and suggest treatment for them, but offer no insight into how [plaintiff's] impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life."); *see also Riccobono v. Saul*, 796 F. App'x 49,

50 (2d Cir. 2020) (in formulating an RFC for light work, the ALJ discounted medical opinions and instead impermissibly relied on her own lay interpretation of "diagnostic tests" and "other non-medical evidence" such as daily activities).

Therefore, remand is necessary for a proper RFC analysis and determination. On remand the ALJ may find it prudent to order a consultative examine or seek the testimony of a medical expert, especially given Plaintiff's substance abuse.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is <u>**GRANTED**</u>; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is <u>**DENIED**</u>; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:     March 15, 2021

*[Signature: Bill Carter]*
William B. Mitchell Carter
U.S. Magistrate Judge